**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **TRAFFIX USA, INC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 21-cv-02093** |
| **v.** | ) | |
| | ) | **Magistrate Judge Jeffrey I. Cummings** |
| **BRANDON BAY & LOGISTICS** | ) | |
| **GROUP INTERNATIONAL, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Traffix USA, Inc. has filed a motion to compel production of documents and amended interrogatory responses, impose sanctions, and extend the discovery deadline. (Dckt. #31). Defendants Brandon Bay and Logistics Group International, Inc. have responded. (Dckt. #34). For the reasons set forth below, Traffix's motion to compel discovery is granted in part on the terms specified herein and the current discovery deadline is vacated.

**I.     Background**

Traffix is a third-party logistics company located in Chicago. (Dckt. #1 at 2). Traffix hired Bay on December 20, 2019. (*Id.* at 3). As a new hire, Bay signed a non-compete agreement, a non-solicitation agreement, and a non-disclosure agreement. Traffix asserts that, by signing these contracts, Bay was legally bound not to use confidential Traffix information for purposes other than Traffix business, to return all company documents upon termination, to refrain from working for any company that competes with Traffix for one year following termination, and to refrain from soliciting any of Traffix's clients for two years following termination. (*Id.*).

1

Bay's professional relationship with Traffix ended on October 1, 2020. Traffix alleges that, since that time, Bay and two others – Scott Pasciak and Adam Williams – entered into a business relationship in order to compete with Traffix. (*Id.* at 6). According to Traffix, it learned of this venture when the owner of Freight Tec. – a Traffix competitor – informed Traffix that Bay and his business partners had approached him seeking work. (*Id.*). Around the same time, Traffix also discovered that Bay had started a new position at LGI, a logistics company based in Houston, Texas. (Dckt. #1 at 1). While Traffix alleges that Bay's role at LGI is "to conduct sales and to solicit former clients of Traffix," (*id.* at 7), defendants assert that Bay does not have a sales role at LGI, (Dckt. #34 at 13). Traffix also alleges that, since being hired by LGI, Bay has used Traffix customer lists, pricing information, load information, and contact information to solicit clients for LGI, including Traffix customers Kinexo and Fresh Results. (Dckt. #1 at 11).

On April 18, 2021, Traffix filed this suit alleging claims for (1) breach of a non-compete contract; (2) breach of a confidentiality agreement; (3) tortious interference with contractual relations; (4) tortious interference with economic advantage; (5) injunctive relief; (6) breach of the duty of loyalty; (7) violation of the Illinois Trade Secrets Act, 765 ILCS 1065/2(d); and (8) violation of the Defend Trade Secrets Act, 18 U.S.C. §1831 *et seq.*. (Dckt. #1). This case has been contentious from the beginning when – rather than filing a motion to dismiss – defendants immediately filed for Rule 11 sanctions, alleging that Traffix had neither factual nor legal bases for its claims. (Dckt. #15). Since that time, both parties allege that opposing counsel has refused to cooperate with various aspects of the discovery process.

Traffix served requests for production and interrogatories on defendants on July 31, 2021. (Dckt. #31 at 4). Although defendants represented to the Court on September 13, 2021, that they

had provided complete responses to these requests, (Dckt. #18), Traffix contends that defendants' responses were deficient. According to Traffix, most of the disclosed documents were "information from Traffix brochures about 401K and benefits plans that have no reference to the discovery sought or the claims in this case." (Dckt. #31 at 6). Traffix asserts that it informed defendants of the deficiencies and asked to meet and confer with defendants but received no response. (Dckt. #31 at 4). Traffix filed a motion to compel discovery and for sanctions on November 4, 2022. (Dckt. #21).

On November 8, 2021, the Court ordered the parties to meet and confer to discuss the allegations raised in Traffix's motion, schedule depositions, and determine what discovery remained and whether any disputes required the Court's attention. (Dckt. #23). They did so on November 11, 2021, and defendants agreed to supplement their discovery responses. On November 19, 2021, defendants produced 126 pages of additional documents (bringing the total to 247 pages). Although this disclosure included some relevant materials (namely, emails between defendants and four customers that Traffix had specifically identified as having been solicited by defendants), Traffix argues that defendants' responses remained deficient.

On December 15, 2021, Traffix issued five third-party subpoenas, apparently in an effort to retain the documents that defendants had withheld. (Dckt. #34 at 6). Defendants contend the subpoenas were improperly issued and assert that counsel for Traffix failed to respond to their requests for a telephone conference about the subpoenas and other discovery disputes. (*Id.*). On January 6, 2022, Traffix sent defendants an email again complaining of discovery deficiencies and stating that it would not engage in any depositions until the deficiencies were addressed. (Dckt. #21 at 54). When the parties finally had a telephone call on January 17, 2022, Traffix apparently refused to further clarify its discovery requests, (Dckt. #34 at 9), and defendants

confirmed that they would not produce any additional documents or amend their interrogatory responses, (Dckt. #31 at 6).  Traffix filed the instant motion to compel on January 26, 2022.

## II.    LEGAL STANDARD

A party may file a motion to compel under Federal Rule of Civil Procedure 37 whenever another party fails to respond to a discovery request or when its response is insufficient. Fed.R.Civ.P. 37(a).  Courts have broad discretion in resolving such disputes and do so by adopting a liberal interpretation of the discovery rules.  *Chicago Reg. Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D.Ill. 2018).  Rule 26 provides that the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed.R.Civ.P. 26(b)(1).  Relevance alone does not transfer to discoverability; the information sought must also be "proportional" to the needs of the case.  *Id.*  Discoverable information is not limited to evidence admissible at trial.  *Id.*

## III.    ANALYSIS

Traffix asks that the Court order defendants to produce amended responses to three interrogatories and to supplement their disclosures to seven requests for production.  Traffix further asks that the Court either compel defendants to pay expenses incurred by Traffix in filing the instant motion or strike defendants' answer.  (Dckt. #31 at 7).  Finally, Traffix asks that the Court extend the discovery deadline, previously set for March 2, 2022, by sixty days.  (*Id.* at 8). In response, defendants ask that the Court deny Traffix's motion to compel, deny the request for an extension of discovery, and order Traffix to provide a date for defendants to depose its corporate representative.  (Dckt. #34 at 14-15).

### A.  Defendants must supplement their discovery responses.

Neither Traffix nor defendants used their brief to argue the flaws or merits of any particular discovery requests.  Indeed, the Court only deduced which requests were at issue by reading Traffix's January 6, 2022[1] letter to defendants (attached as an exhibit), in which Traffix described the discovery deficiencies that remained after defendants' November 19, 2021 supplemental disclosures.[2]  (Dckt. #31 at 46-53).  Instead of addressing the requests at issue, both parties spent the majority of their briefs arguing over which side has been least cooperative with the discovery process thus far.

This lack of analysis is more problematic for defendants than Traffix, as "[t]he party opposing discovery bears the burden of showing why it should be disallowed." *Belcastro v. United Airlines, Inc.*, No. 17 C 1682, 2019 WL 1651709, at *2 (N.D.Ill. Apr. 17, 2019), *overruling objections,* No. 17 C 1682, 2020 WL 1248343 (N.D.Ill. Mar. 15, 2020).  Because defendants did not elaborate on most of their discovery objections in their response, the Court largely relies on the objections in defendants' original discovery responses and November 19 supplemental responses.

### 1.  Defendants must amend their answer to Interrogatory No. 10 and response to Request for Production No. 12.

**Interrogatory No. 10:** Describe, in detail, any pre-employment Communications you had with Mr. Bay relating or referring to Mr. Bay's employment with Logistics Group International, Inc., including any Documents Mr. Bay signed in connection with his employment relationship with Logistics Group International, Inc.

---

[1] Although this letter is dated January 6, *2021*, the Court assumes that this is a scrivener's error  as the letter repeatedly references defendants' November 19, 2021 supplemental disclosures.

[2] Defendants' reference to several discovery requests not mentioned in the January 6 letter – including Interrogatory Nos. 11, 15, 19, 21, 22, and 23, and Request for Production Nos. 16 and 21 – suggests that they, too, were unsure which requests remain at issue.  (Dckt. #34 at 3-5).

5

**Request for Production No. 12:** A copy of all contracts or any other Documents reflecting the nature and/or scope of relationship between LGI and Bay pertaining to this matter.

**Request for Production No. 25:** Produce all documents supporting your denial of paragraph 102 of the Complaint that "Bay's position at LGI is comparable to his former position."

Defendants objected to Interrogatory No. 10 and Request for Production No. 12 on the grounds that they seek information that is irrelevant, is not reasonably calculated to lead to discovery of admissible evidence, and relates to periods of time not relevant to this action. (Dckt. #31 at 46, 50). More specifically, defendants argued that Bay's contract and his pre-employment communications with LGI are irrelevant because: (1) Bay was "lawfully entitled to explore other job opportunities," (2) the non-compete provision of Bay's employment agreement is unenforceable, and (3) Bay's position at LGI is different from his former position at Traffix. (Dckt. #34 at 12). Although defendants characterize these statements as "the material facts of this case," (*id.*), they are, in fact, legal conclusions and do not show that these discovery requests are unrelated to the parties' claims or defenses.

To the contrary, not only do Interrogatory No. 10 and Request No. 12 seek relevant information, but they target information at the heart of Traffix's claims. Traffix contends that Bay violated a non-compete agreement by entering an employment relationship with LGI, a Traffix competitor, less than one year after his employment at Traffix ended. Traffix further contends that Bay was hired by LGI to solicit Traffix's clients, in violation of a non-solicitation agreement and a non-disclosure agreement signed by Bay. Communications between Bay and LGI preceding Bay's employment there – including Bay's employment contract and any other documents describing his role – would certainly shed light on when Bay was hired by LGI, Bay's role at LGI, and what motivation LGI had for hiring Bay, all of which are highly relevant

6

to Traffix's allegations.  *See, e.g., Cohn v. Guaranteed Rate, Inc.*, 318 F.R.D. 350, 356 (N.D.Ill. 2016) (granting Guaranteed Rate, Inc. ("GRI") full access to ex-employee's private email account where the parties had a non-compete clause and the employee's email account contained emails with competitors regarding potential employment with them while she was still employed at GRI); *Triumph Packaging Grp. v. Ward*, 834 F.Supp.2d 796, 816 (N.D.Ill. 2011) (noting that in the context of a non-compete clause, solicitation of direct competitors is strong evidence of irreparable harm).

Defendants further argue that they need not produce any documents in response to Request No. 25 because they have already provided Traffix with a description of Bay's employment responsibilities.  (Dckt. #31 at 52).  The Court will not, however, preclude Traffix from securing documents responsive to Request No. 25 merely because defendants consider the request to be "less than the optimal means of securing information."  *United Techs. Motor Sys., Inc. v. Borg-Warner Auto., Inc.*, No. Civ.A. 97-71706, 1998 WL 1796257, at *3 (E.D.Mich. Sept. 4, 1998) (rejecting argument that the information sought by defendant would be better obtained through interrogatories because "there is nothing which necessarily prohibits the pursuit of information by more than one discovery vehicle").  Defendants' bald assurances that Bay's position at LGI is different from his former position at Traffix and that he is not in a sales role at LGI do not excuse them from disclosing information relevant to Bay's employment.  Again, Traffix has a right to *any* nonprivileged information relevant to its claims.  Fed.R.Civ.P. 26(b)(1).  Accordingly, defendants must amend their answer to Interrogatory No. 10 and supplement their response to Request No. 12 by June 21, 2022.  Defendants must also supplement their response to Request No. 25 to the extent that there are documents responsive to the request that are not otherwise responsive to Request No. 12.

>    **2.    Defendants must produce an amended sworn interrogatory answer to Interrogatory No. 13 and provide their customer list to defense counsel on an "attorney's eyes only" basis.**

Because Interrogatory Nos. 13 and 14 and Request for Production No. 15 seek essentially the same information, the Court will address them together:

> **Interrogatory No. 13:** Since 2020, please describe, in detail, any Services Defendants have provided (either directly or indirectly) to any Persons that are and/or were a customer of Plaintiff, and for each such Person, state the dates that such Services were provided, and the compensation received by Defendants for such Services, and the nature of the Services provided.

> **Interrogatory No. 14:** Please identify all persons that are and/or were a customer of Plaintiff and are also a customer of Logistics Group International, Inc., and identify which persons became customers of Logistics Group International, Inc. since 2020.

> **Request for Production No. 15:** Produce a list of all new customers and their service loads acquired by LGI since 2020 as a result of the efforts of Brandon Bay.

While defendants objected to both interrogatories as insufficiently clear because the terms "services" and "customer" are undefined, the Court finds that defining the terms for the purpose of these interrogatories was unnecessary. There is no basis from which to suggest that Traffix contemplated a special meaning for "services" or "customer," so defendants may rely on the ordinary definitions of the words to respond. It is, however, unclear to the Court what Traffix meant by "indirect" services, so the Court will limit the response to services that LGI and Bay have directly provided to customers who have also received services from Traffix.

Defendants note that, despite their vagueness objection, they did provide information responsive to this request about four customers that were specifically identified by Traffix. (Dckt. #34 at 11). It is unclear whether this disclosure included information about Kinexo and Fresh Results, with whom both Traffix and LGI have worked. Defendants had previously argued that information related to these two customers is irrelevant because LGI had a business

relationship with both prior to Bay's employment at LGI. (Dckt. #34-6 at 14). To the extent defendants' answers did not include information related to these two customers, the Court orders them to amend their answers to correct this deficiency. Discovery related to when and how LGI began working with Kinexo and Fresh Results is clearly relevant to Traffix's claims. Indeed, Traffix has accused defendants of tortious interference with a contractual relationship and tortious interference with prospective economic advantage. To prevail on these claims, Traffix must prove that defendants intentionally interfered with its business relationships. *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 508 (7th Cir. 2007); *Complete Conference Coordinators, Inc. v. Kumon N. Am., Inc.*, 915 N.E.2d 88, 93 (Ill.App.Ct. 2009). Traffix asserts that LGI's business relationships with Kinexo and Fresh Results are the direct result of Bay's violation of various contracts, (Dckt. #1 at 7), and communications between Traffix's former clients and LGI are certainly relevant to these claims.

As for other customers, defendants contend that they are unable to provide further information because they have no way of knowing which of their customers have also worked with Traffix. (Dckt. #34 at 11). While defendants may indeed lack comprehensive knowledge regarding which of their customers also worked with Traffix, this does not excuse them from producing further discovery on this issue. Given the nature of its claims, Traffix is entitled to identify any other former Traffix customer served by LGI. *See, e.g., Sabre Indus., Inc. v. Waller*, No. 18-2111, 2020 WL 12814252, at *2 (C.D.Ill. July 15, 2020) (where plaintiff Sabre alleged that defendant Walker violated his non-compete agreement, "[t]he only way for Sabre to identify any other former customers is to compare a list of APS (Walker's new employer) customers to Sabre's customer list. For this reason, APS's customer list is relevant to Sabre's claim for breach of contract under Fed. R. Civ. P. 26(b)(1)").

9

To determine which, if any, customers of LGI have also been customers of Traffix, LGI must compile a list of every customer – both individuals and companies – it has acquired since January 1, 2020. LGI's concern about disclosing "trade secret, proprietary, and confidential information" can be adequately addressed through the entry of a protective order that would permit defendants to disclose LGI's client list on an "attorney's eyes only" basis.[3] This is a commonly used safeguard in such circumstances, and it is sufficient to protect LGI's interests here. *See, e.g., Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 445 (N.D.Ill. 2006) ("[I]n most cases the question is not whether customer lists will be produced, but under what circumstances."); *Surface Shields, Inc. v. Poly-Tak Prot. Sys., Inc.*, No. 02 C 7228, 2003 WL 21800424, at *1 (N.D.Ill. 2003) (ordering production of customer list but allowing party to designate items as "attorney's eyes only"); *Seaga Mfg., Inc. v. Fortune Res. Enters., Inc.*, No. 99 C 50332, 2002 WL 31399408, at *3 (N.D.Ill. Oct. 24, 2002) (allowing discovery of customer list subject to "attorney's eyes only" and allowing for removal of that restriction when warranted); *see also Berkeley*IEOR v. Teradata Operations, Inc.,* No. 17 C 7472, 2020 WL 5230744, at *2 (N.D.Ill. Sept. 2, 2020) (citing cases). Defendants must disclose their client list to counsel for Traffix by June 17, 2022.

Traffix must provide a list of its current and former customers to its own counsel by the same date. Once both parties have compiled their lists, counsel for Traffix will compare the two and – if there are matches between the lists – counsel for Traffix will inform defense counsel and their own client of the common customers by June 21, 2022.[4] *See Seaga, Mfg.,* 2002 WL

---

[3] The parties are ordered to review the Court's standing order on protective orders, to meet and confer regarding the terms of a confidentiality order based on this District's Model Confidentiality Order, and to submit an original and redlined version of their proposed confidentiality order to the Court's proposed order mailbox, Proposed_Order_Cummings@ilnd.uscourts.gov, on or before June 13, 2022.

31399408, at *3.  By July 1, 2022, defendants must produce an amended sworn answer to Interrogatory No. 13 that states: (1) what services it provided those common customers; (2) the dates such services were provided; (3) the compensation defendants received for those services; (4) whether and to what extent Bay was involved in soliciting those customers; and (5) whether and in what capacity those customers currently work with Bay.  Because this information will constitute a complete response to Interrogatory Nos. 13 and 14, as well as Request for Production No. 15, defendants need only amend their answer to Interrogatory No. 13.

### 3.    Defendants must supplement their response to Request for Production No. 1.

**Request for Production No. 1:** All Documents relied on or referenced by Defendants in order to prepare responses to these Interrogatories and Requests for production of Documents.

Although defendants objected to this request "on the grounds and to the extent that it is overbroad and unduly burdensome as it seeks 'All Documents,'" (Dckt. #34-6 at 21), the use of the phrase "all documents" does not automatically render a request overbroad.  In fact, courts routinely grant motions to compel the production of "all documents" that a party relied on when preparing interrogatory responses.  *See, e.g., Lukis v. Whitepages Inc.*, 535 F.Supp.3d 775, 796 (N.D.Ill. 2021) (granting motion to compel the production of "[a]ll documents considered or relied on in answering Plaintiff's interrogatories"); *Bilek v. Hussain*, No. 19 cv 7739, 2020 WL 7350621, at *3 (N.D.Ill. 2020) (granting motion to compel the production of "all documents or data relied on or referred to in Defendant's Rule 26 disclosures and responses to discovery, or which form the basis of any affidavit or declaration in this case").[5]  The Court will do the same

---

[4] The "attorney's eyes only" designation will remain in place for any LGI customers that do not also appear on the Traffix list.

[5] *See also Brotherhood Mutual Ins. Co. v. Vinkov*, No. ED CV 19-1821-SB (Spx), 2020 WL 6489326, at *6 (C.D.Cal. Oct. 5, 2020) (granting motion to compel production of all documents defendant relied on in

here.  By June 21, 2022, defendants must produce any non-privileged documents that they relied on when answering Traffix's interrogatories and discovery requests.[6]

### 4.  Defendants must supplement their response to Request for Production No. 3.

**Request for Production No. 3:** All documents referring to, relating to, or evidencing communications between Traffix, defendants, and/or any other person or entity with knowledge regarding the subject matter of this action.

Defendants again argued that this request was overbroad due to Traffix's use of the phrase "all documents." (Dckt. #31 at 49).  In this context, the Court agrees.  While the burden is on the responding party to show why a particular discovery request is improper, *Kodish v. Oakbrook Terrace Fire Prot.*, 235 F.R.D. 447, 450 (N.D.Ill. 2006), "when the discovery request is overly broad or relevancy is not apparent, the requesting party must establish relevancy." *Hills v. AT&T Mobility Services, LLC*, No. 3:17-CV-556-JD-MGG, 2021 WL 3088629, at *4 (N.D.Ind. July 22, 2021).  Traffix failed to meet its burden here and made no effort to further narrow the request in its motion to compel.

In contrast to Request No. 1, discussed above, which seeks a necessarily limited number of documents, Traffix's request for documents "referring to, relating to, or evidencing communications" between defendants and "any other person or entity with knowledge regarding the subject matter of this action" seeks potentially boundless information.  The number of individuals with "knowledge regarding the subject matter" of Traffix's eight-count complaint

---

responding to interrogatories); *ALDI Inc. v. Maraccini*, No. 5:19-CV-75-FL, 2019 WL 8051715, at *4 (E.D.N.C. May 15, 2019) (same); *Williams v. Johanns*, 235 F.R.D. 116, 124 (Dist. Columb. 2006) (same); *DIRECTV, Inc. v. Knowles*, No. 7:03-CV-163-F, 2005 WL 8159565, at *3 (E.D.N.C. 21 Jan. 2005) (same).

[6] To the extent that defendants assert that any of the documents requested are protected by attorney-client privilege and work product doctrine, they must produce a privilege log that meets requirements of Rule 26(b)(5) and identifies each document withheld from production under those claims.

likely includes most LGI and Traffix employees. More importantly, Traffix did not narrow the request to communications related to the claims and defenses in this case, but instead sought documents related to *any* communications with *any* person who knows *any*thing about the *subject matter*. This falls well outside what is discoverable under Rule 26(b)(1). *See Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F.Supp.3d 916, 924 (N.D.Ill. 2019) ("Relevance focuses on the claims and defenses in the case, not its general subject matter.").

Accordingly, the Court narrows the request to any correspondence created after January 1, 2020, that is related to the claims and defenses at issue here, i.e., correspondence related to how Bay came to be employed at LGI, Bay's role at LGI, and how LGI began working with customers who previously did business with Traffix. *See Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996) ("[A] district court is not limited to either compelling or not compelling a discovery request; in making its ruling, a district court should independently determine the proper course of discovery based upon the arguments of the parties."). Communications between LGI or Bay with Traffix customers and documents concerning such communications fall within this narrowed request and must be produced. LGI's invoices for former Traffix customers also fall under this request and are relevant to Traffix's claim for damages because the invoice totals will allow Traffix to calculate its lost business. *See, e.g., Sabre Indus.*, 2020 WL 12814252, at *3. Because defendants will be unable to fully respond to this request until counsel for Traffix has identified overlapping customers, *see* Section III(A)(2), defendants need not supplement their response to Request for Production No. 3 until July 1, 2022.

**5.** **Defendants must supplement their response to Request for Production No. 11 and Request for Production No. 27 to the extent described below.**

**Request for Production No. 11:** Any and all Documents, correspondence, or inter-office memoranda concerning the facts, matters, or circumstances that are the subject of this matter.

**Request for Production No. 27:** Produce all documents of internal communications (including emails, notes, memoranda) between representatives of LGI concerning the subject matter of this lawsuit.

Defendants first objected to this request on the grounds that all responsive documents do not yet exist because they have not completed their investigation, discovery, or preparation for trial. This objection means little given that parties have a duty to supplement discovery responses as more materials are created or become available to them. Fed.R.Civ.P. 26(e). Even so, the Court once more agrees that the request is overbroad. Again, relevant discovery does not include all information related to the "general subject matter" of a case, but only information related to the claims and defenses asserted. *Motorola Sols., Inc.*, 365 F.Supp.3d at 924. Accordingly, the Court narrows the request to documents, correspondence, or inter-office memoranda that are in defendants' possession, were created after January 1, 2020, and relate to the claims and defenses asserted. Defendants must produce these documents by June 21, 2022.[7]

Request for Production No. 27 seeks a similar category of documents: communications between "representatives of LGI" concerning the subject matter of this lawsuit. It is unclear if, by "representatives of LGI," Traffix means counsel for LGI or, rather, LGI employees more generally. If the former, then defendants' assertion that these documents are protected by attorney-client privilege and/or attorney work product doctrine is likely correct. Even so, they must produce a privilege log identifying the protected documents (assuming they have not done

---

[7] Again, to the extent that defendants assert that any of the documents requested are protected by attorney-client privilege and work product doctrine, they must produce a privilege log.

so already).  If the latter definition was intended, defendants must supplement their response to Request No. 27 to the extent that there are documents responsive to the request that are not otherwise responsive to Request No. 11.

> **B.    Traffix's request for an award of the attorney's fees and costs it incurred in filing this motion is denied without prejudice.**

Under Federal Rule of Civil Procedure 37(a)(5), there is generally a presumption that the losing party pays when a motion to compel is granted in full.  This presumption may be rebutted if the nonmoving party shows that "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A).  The Court has broad, inherent power to impose sanctions for failure to produce discovery, over and above the provisions of the Federal Rules.  *SEC v. First Choice Mgt. Servs., Inc.*, 678 F.3d 538, 543 (7th Cir. 2012); *Jones v. Bremen High Sch.*, No. 08-cv-3548, 2010 WL 2106640, at *5 (N.D. Ill. May 25, 2010).

The Court declines to award Traffix its attorney's fees and costs at this time.  Although the Court has compelled defendants to amend certain interrogatory answers and to supplement their responses to various requests for production, a number of defendants' objections to complying with Traffix's discovery requests were well-taken.  As stated above, many of Traffix's responses were too broadly focused on the "subject matter of this lawsuit" rather than on the parties' claims or defenses as specified by Rule 26(b)(1).  Moreover, some of Traffix's discovery requests were unduly vague (even to the Court's eyes) and defendants' failure to

respond to them was understandable.  That said, the Court will be open to revisiting this decision if defendants fail to timely comply with the directives within this decision.[8]

## **CONCLUSION**

For the reasons stated above, plaintiff's motion to compel production of documents and amended interrogatory responses, impose sanctions, and extend the discovery deadline (Dckt. #31), is granted in part and denied in part.  The Court orders: (1) the parties to submit to the Court a proposed agreed confidentiality order by June 14, 2022; (2) defendants to produce LGI's list of the customers that it has acquired since January 1, 2020, to counsel for Traffix by June 17, 2022; (3) counsel for Traffix to inform both parties of any common customers by June 20, 2022; (4) defendants to produce an amended answer to Interrogatory No. 10 and to supplement their responses to Request for Production Nos. 1, 11, 12, and 27 by June 21, 2022; and (5) defendants to produce an amended answer to Interrogatory No. 13 and to supplement their response to Request to Produce No. 3 by July 1, 2022.  Defendants are further ordered to file a sworn certification that they have complied with each of the above directives on or before July 11, 2022.[9]  Plaintiff's request for an award of attorney's fees and costs it incurred in filing this motion is denied without prejudice.

The current discovery cutoff date, March 2, 2022, is vacated.  The parties shall meet and confer to determine what further discovery (both fact and expert) is necessary.  By July 15, 2022, the parties shall file a joint status report setting forth what discovery has been completed, what

---

[8] If defendants need more time to comply with any of the Court's deadlines, they are directed to confer with Traffix to determine whether the parties can agree to a reasonable extension of time.  If the parties are unable to reach agreement, defense counsel are directed to promptly file a motion seeking an extension.

[9] *See, e.g., Hansen v. Country Mut. Ins. Co.,* No. 18 CV 244, 2020 WL 5763588, at *3 (N.D.Ill. Sept. 28, 2020) (citing cases).

discovery remains, and a proposed schedule for the completion of any remaining discovery. The Court will thereafter set a new discovery cutoff.

**ENTERED:  June 7, 2022**

**Jeffrey I. Cummings**
**United States Magistrate Judge**